# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| J.A., | **Civil No.** |
|     Plaintiff, | |
| vs. | |
| | **Personal Injury** |
| Hilton Worldwide Holdings, Inc.; Hilton Worldwide International Puerto Rico, LLC; Hilton International of Puerto Rico, LLC, d/b/a EMBASSY SUITES BY HILTON SAN JUAN HOTEL & CASINO; DIAMOND POINT INTERNATIONAL MASSAGE, INC.; CHUBB Insurance Company of Puerto Rico; Universal Insurance Company; A Insurance Company; X Company | **Trial by jury requested.** |
|     Defendants. _____/ | |

## COMPLAINT

**TO THE HONORABLE COURT:**

NOW COME THE PLAINTIFF, J.A., by and through her undersigned counsel, and respectfully alleges and prays as follows:

## JURISDICTIONAL ALLEGATIONS

1. This action is for damages brought pursuant under the applicable provisions of the Civil Code of Puerto Rico of 2020, to include Articles 1536, 31 LPRA § 10801, et seq.; Article 1538 of the Civil Code of Puerto Rico, 31 LPRA § 10803 and Article 1540, 31 LPRA § 10805.

2.	Jurisdiction is proper before this court pursuant to 28 U.S.C. §1332, because this is an action for damages between citizens of different States, and the amount in controversy exceeds the jurisdictional threshold of $75,000.00, exclusive of interest, costs and attorney fees.

3.	Venue properly lies in this judicial district of Puerto Rico, since the battery and other tortious acts described in this complaint and subject of this lawsuit were committed in Carolina, Puerto Rico. Venue lies in this District under 18 U.S.C. §1391.

4.	At all times material hereto, Plaintiff, J.A., was and is an adult female who is a citizen and domiciled in the State of Maryland and is otherwise sui juris. Plaintiff filed this lawsuit using a pseudonym to protect her privacy and because she fears further psychological injury and damages if her name were publicly disclosed, as this lawsuit involves facts of the utmost intimacy regarding Plaintiff's sexual battery. Plaintiff's true identity is known to Defendants and their agents.

5.	At all times material hereto, Defendant, HILTON WORLDWIDE HOLDINGS, Inc. (hereinafter "HILTON WORLDWIDE" is a publicly traded corporation, organized under the provisions of the State of Delaware, with Principal offices located in the State of Virginia. Said corporate entity is the owner of certain Puerto Rico limited liability companies and businesses, who in turn, manage, operate, own and supervises, the Puerto Rico hotel located in Carolina, Puerto Rico that conducts business as EMBASSY SUITES BY HILTON SAN JUAN HOTEL & CASINO, (hereinafter "EMBASSY SUITES SJ) located at 8000 José M. Tartak Ave, Carolina, San Juan 00979, Puerto Rico, which includes the spa where J.A. was sexually assaulted by her massage therapist.

6.	HILTON WORLDWIDE is the entity that enjoys the economic benefit and profit of all of its hotel operations, to include the operations of the Puerto Rico Hotel EMBASSY

SUITES SJ and the benefit derived from tenants and other independent contractors.

7. It is also HILTON WORLDWIDE that through its companies, agents, and employees, selects operators, independent contractors and tenants, that result in additional profit centers for its companies and its own operations, such as the business conducted within the EMBASSY SUITES SJ by codefendant, DIAMOND POINT (further identified below).

8. Co-defendants, Hilton Worldwide International Puerto Rico, LLC and Hilton International of Puerto Rico, LLC, d/b/a EMBASSY SUITES BY HILTON SAN JUAN HOTEL & CASINO are limited liability companies, organized under the laws of the State of Delaware, with principal offices located in Puerto Rico. The sole member of said companies is HILTON WORLDWIDE, described above. It is said defendants, the control, operate, manage and supervise the operations and business activities conducted at the EMBASSY SUITES SJ.

9. All of the above-mentioned Hilton entities are referred to collectively hereinafter as the HILTON defendants. They jointly conduct business at Carolina, Puerto Rico as EMBASSY SUITES SJ.

10. Defendant, DIAMOND POINT INTERNATIONAL MASSAGE, INC., (hereinafter "DIAMOND POINT") is, a corporation organized under the laws of Puerto Rico and was and is licensed to conduct business activity in the city of San Juan, Puerto Rico, with principal place of business located in Puerto Rico. It owns and operates the spa located within the EMBASSY SUITES SJ, located at 8000 José M. Tartak Ave, Carolina, San Juan 00979, Puerto Rico where J.A. was sexually assaulted by her massage therapist.

11. All of the HILTON defendants, receive economic benefit from the operations conducted by DIAMOND POINT within the EMBASSY SUITES SJ.

12. CHUBB Insurance Company of Puerto Rico, is an insurance company organized

under the laws of Puerto Rico that at the time of the incident described in this complaint, had in full force and effect one or more insurance policies to cover the liability of one or more of the defendants to this action, for the incident described in this complaint, under the terms and conditions of said insurance policy.

13. Universal Insurance Company is an insurance company organized under the laws of Puerto Rico that at the time of the incident described in this complaint, had in full force and effect one or more insurance policies to cover the liability of one or more of the defendants to this action, for the incident described in this complaint, under the terms and conditions of said insurance policy.

14. A Insurance Company is the fictitious name to denominate an unknown insurance company, organized and conducting business in Puerto Rico, that at the time of the events described in this complaint had issued an insurance policy to cover the liability and/or excess liability of one or more of the defendants to this action, for damages, as per the terms and condition of said policies. Once said insurance defendant is properly identified, the complaint may be amended in order to substitute with the properly named defendant.

15. X Company is the fictitious named used to identify another company established under the provisions of a State that is not Maryland, with principal offices located in Puerto Rico but not in Maryland, that with the rest of the defendants may also be jointly responsible for damages as described in this complaint. Once its true name is made known, the complaint may be amended in order to substitute said unknown defendant with its proper name.

## FACTS COMMON TO ALL COUNTS

16. Prior to January 5, 2023, HILTON contracted with DIAMOND POINT for profit, for the operation of a spa located within HILTON's property for the purposes of providing spa

4

services to its hotel guests.

17. Prior to January 5, 2023, HILTON and/or DIAMOND POINT hired an employee that has been identified as Nicholas Riviera to work as a massage therapist at the spa located at HILTON for the purposes of providing massage services to HILTON'S hotel guests in private treatment rooms at the spa.

18. On or about January 3rd through January 5th, 2023, J.A. was visiting San Juan, Puerto Rico, and was a registered hotel guest at HILTON.

19. During her stay at HILTON, J.A. observed numerous advertisements for massage services offered at the hotel which could be scheduled online.

20. J.A. used the online scheduling service to book a massage service on January 5, 2023.

21. J.A. was scheduled for a massage with therapist Nicholas Riviera, whom J.A. believed to be an employee of HILTON.

22. J.A. was directed to proceed to a treatment room at her scheduled appointment time.

23. When J.A. arrived at the treatment room, she found a locked space with no personnel there to greet her.

24. After learning that her therapist was running late, eventually J.A. was greeted by Mr. Riviera, who unlocked the treatment room and directed her to undress to her level of comfort. He then left her alone in the room.

25. Within a few minutes, Mr. Riviera, without prior warning or asking permission, entered the treatment room while J.A. was not yet fully undressed and in position under draping on the treatment table.

26. J.A. quickly grabbed herself to cover her partially undressed body and shouted at

Mr. Riviera to please allow her to undress and position herself properly for the massage.

27. Mr. Riviera first lingered for some time and then left the treatment room.

28. J.A. proceeded to remove her bathing suit top and cover up, keeping her bathing suit bottoms on for the massage.

29. J.A. then laid down underneath the provided draping

30. During the massage, J.A. felt a hard object pressing up against her right arm, which was positioned at her side. At first, she thought it was Mr. Riviera's belt buckle. She later realized it was Mr. Riviera's erect penis.

31. J.A. was in shock and felt frozen.

32. Mr. Riviera then began fondling J.A.'s breasts.

33. Mr. Riviera then bent down with an open mouth and attempted to suck J.A.'s breast.

34. J.A. screamed in panic, "What are you doing?!!!"

35. Mr. Riviera then said multiple times, "Oh my, god. I am sorry."

36. Mr. Riviera asked, "Can we stop and talk about this?

37. J.A., horrified and in shock over Mr. Riviera's violation of her, quickly got off the treatment table, exited the room and proceeded to get her friend, who was at the hotel pool.

38. J.A. and her friend proceeded to the hotel reception desk and reported the assault to the front desk staff and the police were called.

39. None of the sexual contact initiated by Mr. Riviera toward J.A. was requested, invited, welcomed, reciprocated, consented to, or otherwise implied in the course of a massage therapy appointment. Indeed, all sexual contact between a massage therapist and a client is expressly prohibited under Puerto Rico law and the ethics rules of massage therapy.

40. The massage therapy industry has a substantial problem that is or should be known

to all operators of spas performing massage therapy services and to the Hilton defendants. The problem is the sheer number of acts of sexual battery, sexual assaults, acts of sexual malfeasance, and acts of sexual misconduct committed by male massage therapists upon female clients.

41. Sexual battery, sexual assault, sexual misconduct, and sexual malfeasance are generally foreseeable consequence of the nature of work involved in the massage industry and is an unfortunate possibility engendered by the type of work massage therapists are paid to perform. This fact is or should be well known to Defendants.

### COUNT I – RESPONDEAT SUPERIOR / VICARIOUS LIABILITY
### (DEFENDANTS HILTON D/B/A EMBASSY SUITES SJ)

42. Plaintiff repeats and re-alleges the allegations set forth in paragraphs 1 through 41 above.

43. At all relevant times, Mr. Riviera, the massage therapist assigned to perform the massage on Plaintiff, was an employee, servant and/or apparent agent of HILTON.

44. Mr. Riviera was authorized and entrusted by Defendant HILTON to be alone with Plaintiff in a darkened room while Plaintiff was undressed and in a vulnerable position.

45. The sexual misconduct described above occurred on a massage table, on premises operated and/or controlled by HILTON.

46. Mr. Riviera was authorized to touch J.A. via skin-to-skin contact in a manner consistent with providing spa services. Mr. Riviera extended and converted his authorized touching of J.A. into the sexual battery of Plaintiff as described above.

47. The sexual misconduct described above occurred during business hours of HILTON and occurred in the course and scope of the performance of Mr. Riviera's duties.

48. The initial physical contact by Mr. Riviera towards J.A. was in furtherance of the

business of HILTON.

49. The wrongful acts of Mr. Riviera were committed in the actual or apparent course and scope of his employment or agency with HILTON.

50. The massage services provided by Mr. Riviera benefitted HILTON.

51. Mr. Riviera was aided in accomplishing the tort upon J.A. by the existence of his agency and/or employment relationship with HILTON. Specifically, Mr. Riviera used the authority actually delegated to him by HILTON to initiate sexual contact with Plaintiff while she was undressed and laying in prone, vulnerable position in a dark room seeking relaxation. J.A. was in this vulnerable position with Mr. Riviera precisely because of Mr. Riviera's agency relationship with HILTON.

52. Under the doctrine of respondent superior, HILTON was negligent and is responsible for the reckless and intentional actions of its servant, committed in the actual or apparent scope of his duties.

53. As a direct and proximate cause of the foregoing, J.A. has suffered injuries, mental anguish and the loss of enjoyment of life.

WHEREFORE, Plaintiff, J.A., demands judgment against Defendants, HILTON D/B/A EMBASSY SUITES SJ for compensatory damages, costs and such other and further relief as this Court deems just and proper.

## COUNT II – NEGLIGENT HIRING, RETENTION AND SUPERVISION
### (HILTON D/B/A EMBASSY SUITES SJ)

54. Plaintiff repeats and re-alleges the allegations set forth in paragraphs 1 through 41 above.

55. At all material times, J.A. was an invitee and/or authorized visitor and paying guest

of HILTON.

56. At all material times, HILTON held itself out to the public as providing an on-site spa which provided a variety of services to guests of the hotel, including massage therapy.

57. At all material times, HILTON represented to the public that it retained control over the quality of services provided at the on-site spa and the safety of its guests while obtaining spa services.

58. HILTON, as an Innkeeper under Puerto Rico Law, owed a duty to J.A. to use reasonable care to ensure her safety, care and well-being while she was obtaining spa services at its establishment. These duties encompassed the hiring, retention and supervision of Mr. Riviera and/or the operations of its tenant.

59. HILTON negligently breached these duties by failing to protect the J.A. from sexual battery and lewd and lascivious acts committed by its agent or employee, Mr. Riviera.

60. Upon information and belief, prior to the sexual battery perpetrated on J.A., HILTON knew or in the exercise of reasonable care should have known that Mr. Riviera was unfit for the intimate duties assigned, did not exhibit appropriate boundaries with women, did not possess the judgment or temperament to work as a massage therapist, was sexually inappropriate with females, and/or posed a risk of perpetrating unwanted sexual contact with J.A.

61. Despite having such information, HILTON hired and/or retained Mr. Riviera without any limitations on his employment and/or by its actions and lack of actions, allowed Mr. Riviera to be hired and work within its Embassy Suites SJ hotel. Hilton thus negligently failed to provide additional supervision of Mr. Riviera and/or Mr. Riviera's employer, and took no action protect any of his clients.

62. At all relevant times, HILTON knew or in the exercise of reasonable care should

have known that Mr. Riviera was unfit, dangerous, and a threat to the health, safety and welfare of women entrusted to him for spa services.

63. Despite such actual or constructive knowledge, HILTON retained Mr. Riviera, and failed to exercise adequate supervision by placing J.A. in a vulnerable position on the massage table in a dark room alone with Mr. Riviera.

64. As a direct and proximate cause of the foregoing, J.A. has suffered psychological and emotional injuries, mental anguish and the loss of enjoyment of life.

WHEREFORE, Plaintiff, J.A., demands judgment against Defendants, HILTON D/B/A EMBASSY SUITES SJ, for compensatory damages, costs and such other and further relief as this Court deems proper.

### **COUNT III - NEGLIGENT BUSINESS OPERATIONS (PROTOCOL AND TRAINING)**
### **(HILTON D/B/A EMBASSY SUITES SJ)**

65. Plaintiff repeats and re-alleges the allegations set forth in paragraphs 1 through 41 above.

66. At all material times, J.A. was an invitee and/or authorized visitor and paying guest of HILTON. Hilton is an innkeeper under Puerto Rico law.

67. At all material times, HILTON held itself out to the public as providing an on-site spa which provided a variety of services to guests of the hotel, including massage therapy.

68. At all material times, HILTON represented to the public that it retained control over the quality of services provided at the on-site spa and the safety of its guests while obtaining spa services.

69. HILTON owed a duty to J.A. to use reasonable care to ensure her safety, care and well-being while she was on their premises to obtain massage therapy services.

70. Prior to J.A.'s massage at the on-site spa at HILTON, HILTON knew that male massage therapists were committing sexual assault and/or engaging in sexual contact with female massage clients at extraordinary rates and that these facts were *not* generally known to the public.

71. The high rate of sexual contact in the spa setting constitutes a dangerous condition of which its female clients, including J.A., were unaware and which should have been disclosed by HILTON to its female hotel guests, together with instructions about how to prevent, be prepared for, and respond to such incidents, particularly if they occur when no one else is in the spa.

72. HILTON had a duty to implement reasonable policies and procedures to protect its guests, particularly with respect to a person employed on HILTON'S premises who were placed in a position of control over a vulnerable guest and was in a position to do intentional harm to that guest.

73. HILTON did not have reasonable policies and procedures in place to protect its female guests from a sexual battery by a person performing services at HILTON, nor did it ensure that its tenants had in place reasonable policies and procedures. In particular, HILTON failed to take reasonable steps to ensure that female clients who received massages from male therapists were sufficiently warned of and protected from foreseeable harm.

74. HILTON negligently breached its duty of care by failing to act as a reasonable and prudent Puerto Rico Innkeeper and business operator would have under the same or similar circumstances. Specifically, HILTON committed negligence by:

   a. Failing to enforce adequate policies to punish massage therapists who commit sexual misconduct, which served to embolden perpetrators who would not fear harsh punishment;

   b. Failing to create, implement, and establish policies and procedures to properly train

employees to ensure the proper and safe conduct of massage therapists;

c. Failing to create, implement, and establish protocols to train employees on policies and procedures to ensure proper supervision of employees who were entrusted with the care and treatment of clients;

d. Failing to create and implement procedures and properly train employees on draping procedures and policies and procedures preventing sexual misconduct, abuse or harm to the clients; identifying individuals who posed a risk of harm to the clients; how to respond to situations that posed a risk of harm to the clients; how to handle reports involving inappropriate situations or relationships involving the clients; and how to report inappropriate situations involving clients to law enforcement;

e. Failing to warn female guests of the high rate of sexual battery by male massage therapists within the industry;

f. Failing to create, implement, and properly train employees on their duties as a professional in whom a client places his or her trust; and

g. Failing to install a panic/call button for clients in the massage therapy rooms.

h. Failing to properly create, implement, and establish policies and procedures to supervise independent contractors and the employees and contractors of the same or its tenants providing Spa services within the Hilton hotel,

i. Failing to properly ensure that its tenants had in place proper policies and procedures to protect guests like plaintiff.

75. As a direct and proximate cause of the foregoing, J.A. has suffered psychological and emotional injuries, mental anguish and the loss of enjoyment of life.

WHEREFORE, Plaintiff, J.A., demands judgment against Defendants, HILTON D/B/A EMBASSY SUITES SJ, for compensatory damages, costs and such other and further relief as this Court deems proper.

### COUNT IV – RESPONDEAT SUPERIOR/VICARIOUS LIABILITY
### (DEFENDANT DIAMOND POINT INTERNATIONAL, INC.)

76. Plaintiff repeats and re-alleges the allegations set forth in paragraphs 1 through 41 above.

77. At all relevant times, Mr. Riviera, the massage therapist assigned to perform the massage on J.A., was an employee, servant and/or apparent agent of DIAMOND POINT, EMBASSY SUITES SJ.

78. Mr. Riviera was authorized and entrusted by DIAMOND POINT to be alone with J.A. in a darkened room while J.A. was undressed and in a vulnerable position.

79. The sexual misconduct described above occurred on a DIAMON POINT massage table, on premises operated and/or controlled by DIAMOND POINT.

80. Mr. Riviera was assigned by and authorized by DIAMOND POINT to touch J.A. via skin-to-skin contact in a manner consistent with providing spa services. Mr. Rivera extended and converted his authorized touching of J.A. into the sexual battery of J.A. as described above.

81. The sexual misconduct described above occurred during business hours of DIAMOND POINT and occurred in the course and scope of the performance of Mr. Riviera's duties for DIAMOND POINT, EMBASSY SUITES SJ.

82. The initial physical contact and relationship of Mr. Rivera with J.A. was in furtherance of the business of DIAMOND POINT and/or EMBASSY SUITES SJ.

83. The wrongful acts of Mr. Riviera were committed in the actual or apparent course

and scope of his employment or agency with DIAMOND POINT.

84. The massage services provided by Mr. Riviera benefitted DIAMOND POINT and/or EMBASSY SUITES SJ.

85. Mr. Riviera was aided in accomplishing the tort upon J.A. by the existence of his agency or employment relationship with DIAMOND POINT. Specifically, Mr. Riviera used the authority actually delegated to him by DIAMOND POINT to initiate sexual contact with J.A. while she was undressed and laying in prone, vulnerable position in a dark room seeking relaxation. She was in this vulnerable position with Mr. Rivera precisely because of Mr. Riviera's agency relationship with DIAMOND POINT.

86. Under the doctrine of respondent superior, DIAMOND POINT responsible for the grossly negligent, reckless and intentional actions of its servant, committed in the actual or apparent scope of his duties.

87. As a direct and proximate cause of the foregoing, J.A. has suffered injuries, mental anguish and the loss of enjoyment of life.

WHEREFORE, Plaintiff, J.A., demands judgment against Defendant, DIAMOND POINT INTERNATIONAL, INC. for compensatory damages, costs and such other and further relief as this Court deems just and proper and for additional damages as allowed by Article 1538 of the Civil code of Puerto Rico of 2020.

### COUNT V – NEGLIGENT HIRING, RETENTION AND SUPERVISION (DIAMOND POINT INTERNATIONAL, INC.)

88. Plaintiff repeats and re-alleges the allegations set forth in paragraphs 1 through 41 above.

89. At all material times, J.A. was an invitee and/or authorized visitor and paying client

of DIAMOND POINT.

90. DIAMOND POINT owed a duty to J.A. to use reasonable care to ensure her safety, care and well-being while she was obtaining spa services at its establishment. These duties encompassed the hiring, retention and supervision of Mr. Riviera.

91. DIAMOND POINT breached these duties by failing to protect J.A. from sexual battery and lewd and lascivious acts committed by its agent or employee, Mr. Riviera.

92. Upon information and belief, prior to the sexual battery perpetrated on J.A., DIAMOND POINT knew or in the exercise of reasonable care should have known that Mr. Riviera was unfit for the intimate duties assigned, did not exhibit appropriate boundaries with women, did not possess the judgment or temperament to work as a massage therapist, was sexually inappropriate with females, and/or posed a risk of perpetrating unwanted sexual contact on Plaintiff.

93. Despite having such information, DIAMOND POINT hired and/or retained Mr. Rivera without any limitations on his employment, failed to provide additional supervision of Mr. Rivera, and took no action protect any of his clients.

94. At all relevant times, DIAMOND POINT knew or in the exercise of reasonable care should have known that Mr. Riviera was unfit, dangerous, and a threat to the health, safety and welfare of women entrusted to him for spa services.

95. Despite such actual or constructive knowledge, DIAMOND POINT negligently hired and/or retained Mr. Riviera, and failed to exercise adequate supervision by placing J.A. in a vulnerable position on the massage table in a dark room alone with Mr. Riviera.

96. As a direct and proximate cause of the foregoing, J.A. has suffered psychological and emotional injuries, mental anguish and the loss of enjoyment of life.

97. DIAMOND POINT, based on the facts described in this complaint, was grossly negligent in the performance of its duties towards J.A. and its supervision and training of its employee Mr. Riviera.

WHEREFORE, Plaintiff, J.A., demands judgment against Defendant, DIAMOND POINT INTERNATIONAL, INC. for compensatory damages, costs and such other and further relief as this Court deems proper and such additional compensation as allowed by Article 1538 of the Civil Code of Puerto Rico.

### COUNT VI - NEGLIGENT BUSINESS OPERATIONS (PROTOCOL AND TRAINING) (DIAMOND POINT INTERNATIONAL, INC.)

98. Plaintiff repeats and re-alleges the allegations set forth in paragraphs 1 through 41 above.

99. At all material times, J.A. was an invitee and/or authorized visitor and paying client of DIAMOND POINT.

100. DIAMOND POINT owed a duty to J.A. to use reasonable care to ensure her safety, care and well-being while she was on their premises to obtain massage therapy services.

101. Prior to J.A.'S massage at the on-site spa at DIAMOND POINT, DIAMOND POINT knew that male massage therapists were committing sexual assault and/or engaging in sexual contact with female massage clients at extraordinary rates and that these facts were *not* generally known to the public.

102. The high rate of sexual contact in the spa setting constitutes a dangerous condition of which its female clients, including Plaintiff, were unaware and which should have been disclosed by DIAMOND POINT to its female hotel guests, together with instructions about how to prevent, be prepared for, and respond to such incidents, particularly if they occur when no one

else is in the spa.

103. DIAMOND POINT had a duty to implement reasonable policies and procedures to protect its guests, particularly with respect to a person employed on DIAMOND POINT's premises who were placed in a position of control over a vulnerable guest and was in a position to do intentional harm to that guest. Yet it failed to act.

104. DIAMOND POINT did not have reasonable policies and procedures in place to protect its female guests from a sexual battery by a person performing services at DIAMOND POINT. In particular, DIAMOND POINT failed to take reasonable steps to ensure that female clients who received massages from male therapists were sufficiently warned of and protected from foreseeable harm.

105. DIAMOND POINT breached its duty of care by failing to act as a reasonable and prudent business operator would have under the same or similar circumstances. Specifically, DIAMOND POINT committed negligence by:

j. Failing to enforce adequate policies to punish massage therapists who commit sexual misconduct, which served to embolden perpetrators who would not fear harsh punishment;

k. Failing to supervise, create, implement, and establish policies and procedures to properly train employees to ensure the proper and safe conduct of massage therapists;

l. Failing to supervise, create, implement, and establish protocols to train employees on policies and procedures to ensure proper supervision of employees who were entrusted with the care and treatment of clients;

m. Failing to supervise, create and implement procedures and properly train employees

   on draping procedures and policies and procedures preventing sexual misconduct, abuse or harm to the clients; identifying individuals who posed a risk of harm to the clients; how to respond to situations that posed a risk of harm to the clients; how to handle reports involving inappropriate situations or relationships involving the clients; and how to report inappropriate situations involving clients to law enforcement;

n. Failing to warn female guests of the high rate of sexual battery by male massage therapists within the industry;

o. Failing to supervise, create, implement, and properly train employees on their duties as a professional in whom a client places his or her trust; and

p. Failing to install a panic/call button for clients in the massage therapy rooms and by being lax and careless in the operation of its business and in providing contracted SPA services.

106. As a direct and proximate cause of the foregoing, J.A. has suffered psychological and emotional injuries, mental anguish and the loss of enjoyment of life.

WHEREFORE, Plaintiff, J.A., demands judgment against Defendant, DIAMOND POINT INTERNATIONAL, INC., for compensatory damages, costs and such other and further relief as this Court deems proper.

## COUNT VII - DIRECT ACTION AGAINST INSURANCE COMPANY DEFENDANTS

107. CHUBB Insurance Company of Puerto Rico, Universal Insurance Company and A Insurance Company as per the provisions of the insurance code of Puerto Rico are directly responsible to the plaintiff for all damages caused, as per the insurance policies in effect at the

time of the incident described in this complaint.

## COUNT VIII - SPECIAL DAMAGES

108.    As a result of the incident and damages described in this complaint, plaintiffs have suffered and will suffer additional unwanted economic damages, to include damages related to medical treatments.  Said damages are reasonable estimated in a sum in excess of $50,0000.

## COUNT IX - CIVIL CODE OF PUERTO RICO DAMAGES AND DEMAND FOR JURY TRIAL

As per the provisions of the Civil Code of Puerto Rico and as per the facts averred in this complaint, all of the defendants to this action are jointly responsible to the plaintiff for all damages caused to suffer.

It is averred that all of the damages suffered by the plaintiff and described in each count above, to include physical and moral damages, and special damages are estimated **in a sum in excess of ONE MILLION DOLLARS.**

As per the provisions of Article 1538 of the Civil Code of Puerto Rico of 2020, 31 LPRA 10803, if a jury also determines that the damages caused the plaintiff to suffer were caused either illegally, or with disregard to the life or safety of the plaintiff, that the jury be instructed that an additional compensation may be awarded to the plaintiff by the Jury.

Plaintiff hereby demands a jury trial in this action.

In San Juan, Puerto Rico this 2nd day of November, 2023.

**RIVERA-ASPINALL, GARRIGA & FERNANDINI LAW FIRM**
Attorneys for Plaintiff
1647 Adams St. Summit Hills
San Juan, PR 00920-4510
Tel: 787-792-8644  Fax: 787-792-6475
aspinall@ragflaw.com

BY: _____
**Julian R. Rivera Aspinall, Esq.**
USDCPR Number 208506